

**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7260
Washington, DC 20530

Tel: (202) 514-3388

February 26, 2025

VIA CM/ECF

Clifton Cislak, Clerk of Court
U.S. Court of Appeals for the D.C. Circuit
333 Constitution Avenue, NW
Washington, DC 20001

RE:     *AIDS Vaccine Advocacy Coalition v. DOS*;
          *Global Health Council v. Trump*,
          Nos. 25-5046, 25-5047 (D.C. Cir.)

Dear Mr. Cislak:

      In the government's recently filed stay motion, we indicated (at 3 n.1) that we would notify this Court when the district court acted on our pending stay motion. The district court has denied that motion in the attached order.

                                                 Sincerely,

                                                 */s/ Sean R. Janda*
                                                 Sean R. Janda

cc:     Counsel of Record (via CM/ECF)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-00402 (AHA) |

**Order Denying Motion To Stay Pending Appeal**

On February 13, 2025, this Court granted a temporary restraining order ("TRO"), finding Plaintiffs had shown that Defendants' blanket suspension of congressionally appropriated foreign aid funds would cause them irreparable harm and was likely arbitrary and capricious under the Administrative Procedure Act ("APA") for failing to consider the immense reliance interests at stake. *Glob. Health*, ECF No. 21; *AIDS Vaccine*, ECF No. 17. While the Court did not grant Plaintiffs the full scope of emergency relief they sought, it enjoined Defendants from continuing a blanket freeze of the congressionally appropriated funds. Over the nearly two weeks since, Plaintiffs have moved multiple times to enforce the Court's TRO and hold Defendants in contempt,

each time attaching evidence that Defendants have continued their funding freeze and evidence of the irreparable harm to businesses and organizations across the country that justified the TRO. In response to those motions, the Court declined to hold Defendants in contempt and reaffirmed certain flexibility and authority Defendants reserved, consistent with the TRO. *AIDS Vaccine*, ECF No. 30; *AIDS Vaccine*, Feb. 25, 2025, Min. Entry; *see also AIDS Vaccine*, ECF No. 34 (addressing Defendants' motion for clarification). However, the Court twice reiterated in its orders: "[T]o the extent Defendants have continued the blanket suspension, they are ordered to immediately cease it and to take all necessary steps to honor the terms of contracts, grants, cooperative agreements, loans, and other federal foreign assistance awards that were in existence as of January 19, 2025, including but not limited to disbursing all funds payable under those terms." *AIDS Vaccine*, ECF No. 34 at 5; *AIDS Vaccine*, ECF No. 30 at 5. The Court's TRO and these subsequent orders remain in effect and unchallenged. Neither Defendants' recent notice of appeal nor the instant motion to stay pending appeal challenges the terms of the TRO or these prior orders.

      Defendants have filed the instant motion to stay the Court's order granting Plaintiffs' latest motions to enforce the TRO. In those motions, Plaintiffs again provided evidence that Defendants have simply continued their blanket funding freeze and further documentation of the irreparable harm they are suffering, including attestations of severe harm that will manifest before the end of the week. Plaintiffs explained that they tailored their motion to enforce to address only the most acute irreparable harm, seeking compliance with the TRO by unfreezing the congressionally appropriated funds *at least* for all work completed prior to February 13, the date of the Court's TRO. Upon receiving the motion, and now twelve days since the TRO had been granted, the Court held a prompt hearing to hear from all parties in both cases on the state of compliance. At the hearing, counsel for Defendants acknowledged that the Court's TRO foreclosed Defendants from

giving any effect to suspensions or terminations that were issued before February 13. *AIDS Vaccine*, ECF No. 35 at 33–34. The Court asked counsel for Defendants if he was "aware of steps taken to actually release those funds," consistent with the TRO and subsequent orders. *Id.* at 35. Counsel responded that he was "not in a position to answer that." *Id.* For this and additional reasons stated on the record, the Court orally granted Plaintiffs' second round of motions to enforce the TRO. The Court ordered Defendants to unfreeze funds for work completed prior to February 13, consistent with the terms of the TRO and the Court's subsequent orders, giving Defendants an additional 36 hours to do so. The Court made clear that, although it was focusing on this specific aspect of the TRO that was the subject of Plaintiffs' motion to enforce and which was a consequence of the TRO's injunctive relief, the Court was "in no way limiting the scope of the TRO or modifying its terms." *Id.* at 55–56. The Court further ordered the parties to provide a joint status report the next day, updating the Court on the circumstances and providing documentation necessary for the parties and Court to assess the state of compliance.

Defendants' principal basis for staying the Court's ruling pending appeal appears to be that they can only partially unfreeze funds within the additional 36 hours that the Court gave them, and that they need more time to unfreeze the funds at issue in Plaintiffs' latest motion to enforce. *See AIDS Vaccine*, ECF No. 37 at 2–3 (stating it is "not possible for Defendants to comply" within 36 hours). This is not something that Defendants have previously raised in this Court, whether at the hearing or any time before filing their notice of appeal and seeking a stay pending appeal. That is so even though Plaintiffs' motion to enforce explicitly proposed compliance on this time frame. If Defendants wanted to propose a different schedule for achieving compliance, that is something they could have proposed to this Court and that the Court could have considered alongside Plaintiffs' showings. Any such schedule would have to take into account that Defendants have

3

already had nearly two weeks to come into compliance, apparently without taking any meaningful steps to unfreeze funds. Moreover, particularly given Defendants' delay and the imminent harm Plaintiffs have documented, it would require far greater specificity than has been provided in the motion to stay pending appeal, including significant, concrete steps in the immediate term toward reaching compliance. This is not nearly grounds for a stay pending appeal—to the contrary, a stay would directly contradict that purpose.

Defendants' remaining arguments in the motion for stay pending appeal demonstrate the shifting ground at this early stage and simply highlight the need for expeditious resolution of the preliminary injunction motions in these cases, which the Court has agreed to consider on the parties' proposed briefing schedule. Defendants state, for instance, that injunctive relief here "intrudes deeply into the prerogatives of the Executive Branch and the discretion committed to the President under Article II," asserting that "Executive Branch leadership harbors concerns about the possibility of waste and fraud and is in the process of developing revised payment processing systems to address those concerns." *AIDS Vaccine*, ECF No. 37 at 4. But the blanket suspension of congressionally appropriated funding that has been challenged and temporarily enjoined was the result of a categorical order, not any specific finding "about the possibility of waste and fraud." Indeed, in defending the challenged action at the Court's TRO hearing, Defendants did not even attempt to argue that the agency action was or could be justified based on waste or fraud. And, to date, Defendants have not adduced any evidence "about the possibility of waste and fraud" beyond conclusory statements like the one in their motion.

Moreover, although Defendants' motion to stay refers to "the prerogatives of the Executive Branch and the discretion committed to the President under Article II," it does so without offering meaningful depth to analyze the argument, including not identifying the particular constitutional

4

prerogatives they rely on. For instance, Defendants do not explain how the described prerogatives bear on likely violation of the APA, the statutory authority on which the TRO was based and whose constitutional validity has not been challenged. As written, the argument seems to simply presume that Defendants will prevail on the separation of powers questions that Plaintiffs have raised, without nearly enough analytical depth. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) ("The Executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue."); *id.* at 62 (Roberts, C.J., dissenting) (recognizing that "[t]he Constitution allocates some foreign policy powers to the Executive, grants some to the Legislature, and enjoins the President to 'take Care that the Laws be faithfully executed'").

Defendants' arguments that injunctive relief under the APA runs into a sovereign immunity problem given the monetary consequences, and that remedies may be available under the Contract Disputes Act or the Tucker Act, are similarly undeveloped and an attempt to pretermit the preliminary injunction stage. Defendants state that the Court has "refus[ed] to consider its own jurisdiction" before entering its TRO. That is not so. At the hearing on Plaintiffs' motion to enforce, the Court simply noted that the purpose of the hearing was to understand Defendants' compliance, not to relitigate the TRO. *See AIDS Vaccine*, ECF No. 35 at 47 (explaining that "this is not an opportunity to relitigate the TRO. The TRO is in effect, it hasn't been stayed or overturned in any sort of way. I do want to make that clear."). However, the Court has considered its jurisdiction at each stage of this case. Defendants' undeveloped arguments on this point to date have not persuaded the Court that they would affect the Court's prior likelihood of success analysis as it relates to the TRO. For example, Defendants' instant motion does not meaningfully engage with the large body of precedent on this question. *See, e.g.*, *Kidwell v. Dep't of Army*, 56 F.3d 279, 285 (D.C. Cir. 1995) (reviewing this body of case law and recognizing that although "a victory for

the plaintiffs may well have required the government to pay them money, the Tucker Act was not implicated" because monetary benefits would not come "from the district court's exercise of jurisdiction but from the structure of" statutory and regulatory requirements); *Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 829 (D.C. Cir. 2000) ("Not all forms of monetary relief are money damages."); *Robles v. Kerry*, 74 F. Supp. 3d 254, 260 (D.D.C. 2014) (noting that APA waives sovereign immunity for claims seeking "relief other than money damages" but that money damages "are categorically exclusive of *specific relief*—which includes monetary relief sought as a statutory entitlement"). Parties regularly raise jurisdictional arguments at the TRO phase—or, like here, well after a TRO has been granted—and the conclusion that such arguments do not alter the Court's analysis is not a basis for staying the TRO pending appeal.

To be sure, the parties requested a briefing schedule to develop these arguments for the preliminary injunction phase, which the Court has adopted and is still in progress. Under that schedule, Defendants recently filed their preliminary injunction brief, and the Court shortened Plaintiffs' deadline to reply to noon tomorrow, in the interest of proceeding as expeditiously as possible. The Court is prepared to hold a hearing on the preliminary injunction motions in both cases by March 4, 2025, and issue an opinion considering the full record and arguments before it with full dispatch. The Court has set the expiration date for the TRO at 11:59 p.m. on March 10, 2025, or the date the Court resolves the preliminary injunction motions, whichever is sooner.

The purpose of temporary emergency relief was to restore the status quo as it existed before Defendants' blanket suspension of congressionally appropriated funds, given Plaintiffs' strong showing of irreparable harm and that Defendants' blanket suspension of funds was likely arbitrary and capricious. A stay pending appeal would run directly contrary to that purpose and, indeed,

would have the opposite effect of rendering the Court's TRO—unchallenged in the appeal or stay motion—a nullity. The Court accordingly denies Defendants' motion for a stay pending appeal.

**SO ORDERED.**

_____
AMIR H. ALI
United States District Judge

Date:   February 26, 2025